OPINION. OppeR, Judge: Petitioner’s position that the present issue is limited to whether petitioner’s “profit-sharing plan” complied with Internal Revenue Code, section 165 (a), seems to be supported by the opening statement of counsel and by the apparent agreement thus developed as to the scope of controversy. As originally presented, the two questions were whether there has been compliance with any requirements of permanence inherent in section 165 (a), and whether the benefits of the trust were so preponderantly weighted in favor of the corporate officers that it could not be said that it was for “the exclusive benefit” of its employees.[2] Since the latter objection is not pressed in respondent’s brief, we regard the only issue requiring consideration as that of permanence. Granting in this respect the applicability to the year before us of respondent’s regulations, as amended almost two years later, T. D. 5278, 1943 C. B. 478, on the theory that they were either properly made retroactive or were merely declaratory of the interpretation at all times required, the most that can be said is that the abandonment of the plan after one year “for any cause other than business necessity” was “evidence that the plan from its inception was not a bona fide program * * [3] Granting further in respondent’s favor that the circumstances causing the decision to abandon the plan were not a “business necessity,” and therefore that its abandonment constitutes the evidence to which the regulation refers, we are, nevertheless, called upon to examine the operative facts to ascertain whether this evidence, which certainly can not be conclusive, is sufficiently rebutted so that on the whole record the burden imposed upon the petitioner of proving a “bona fide plan” is sustained. The testimony shows that the reason for the abandonment of the plan was an outgrowth of petitioner’s purpose in creating it. Viewing as improbable the approval by the Salary Stabilization Unit of percentage increases in salaries to all of petitioner’s employees if these were to be paid in cash, the profit-sharing plan in question was chosen in order on the one hand to assure ultimate additional payments to the employees and on the other to postpone the actual payments until a five-year period at the conclusion of the war. It was petitioner’s understanding that such a plan would be acceptable to the Salary Stabilization Unit and it was in fact agreed to by the employees. Upon submission to the Salary Stabilization Unit, after payment to the trust of the profits computed for the first year of operation, the plan was disapproved as to any future payments, but petitioner was advised that if it were to discontinue the plan the payment already made would be permitted to remain undisturbed. An alternative requiring amendment of the plan to call for a longer waiting period “would not be acceptable to the employees.”4 The conclusion appears to us inescapable that these circumstances leading to the abandonment of the plan after the main purpose originally envisaged was found to be impossible of fulfillment demonstrate that on the whole record there was a bona fide program for the exclusive benefit of employees in general. We think that under these circumstances the "bona fides of petitioner’s program for the exclusive benefit of its employees in general is not overcome by the mere fact of abandonment when the reasons therefore have been adequately shown and explained. Assuming, as we have done, the necessity that a profit-sharing plan must have a fair degree of permanence and continuity, we are nevertheless of the opinion that any such requirement has here been met. Decision will be entered under Rule 50. SEC. 165. EMPLOYEES’ TRTJSTS. (a) Exemption Ekom Tax. — A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of some or all of his employees— (1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees the earnings, and principal of the fund accumulated by the trust in accordance with such plan, and (2) if under the trust instrument it is impossible, at any timfe prior to the satisfae-. tion of all liabilities with respect to employees under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees, shall not be taxable under section 161, but the amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in by him. Such distributees shall for the purpose of the normal tax be allowed as credits against.net income such part of the amount so distributed or made available as represents the Items of interest specified in section 25(a). “The term ‘plan’ implies a permanent as distinguished from a temporary program, While the employer may reserve the right to change or terminate the plan, and to discontinue contributions thereunder, if the plan is abandoned for any cause other than business necessity within a few years after it has taken effect, this will be evidence that the plan from its inception was not a bona fide program for the exclusive benefit of employees in general. Especially will this be true in the case of a pension plan under which pensions were fully funded for the highly paid employees or others in favor of whom discrimination is prohibited under section 165(a), and which was abandoned soon after the pensions for such favored employees had been provided. The permanency of the plan will be indicated by all of the surrounding facts and circumstances, including the likelihood of the employer’s ability to continue contributions as provided under the plan. In the event a plan is abandoned, the employer should promptly notify the Commissioner, stating the circumstances which led to the discontinuance of the plan.” [T- P- 5278, 1943 C. p. 478, 481, amending Regulations 103, sec. 19.165 (a) (l)-l.J Testimony of petitioner’s president.